

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00330-CR

Josefa **GARZA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR8053
Honorable Melisa Skinner, Judge Presiding

Opinion by:  Marialyn Barnard, Justice

Sitting:  Marialyn Barnard, Justice
Patricia O. Alvarez, Justice
Irene Rios, Justice

Delivered and Filed:  July 18, 2018

AFFIRMED

A jury found Appellant Josefa Garza ("Garza") guilty of possession of a controlled substance in an amount less than one gram. In a single issue on appeal, Garza argues she received ineffective assistance of counsel at trial. Because we overrule Garza's sole issue, we affirm the trial court's judgment.

**BACKGROUND**

**A.    The arrest**

On December 24, 2015, San Antonio Police Officer Juan Hernandez was dispatched to a motel parking lot based on an anonymous report of a suspicious white pickup truck with two people inside the cab. Officer Hernandez testified the area was known for drug activity and prostitution.

When Officer Hernandez arrived at the scene, a man exited the white pickup truck. Officer Hernandez made contact with the man and then approached the truck, where Garza was sitting in the passenger seat with a purse on her lap. Garza told Officer Hernandez that she and the man were waiting to collect money from someone. While talking to Garza, Officer Hernandez observed empty, "small little Ziploc baggies" in the truck, which he testified "are known to carry narcotics." Officer Hernandez asked Garza for identification, and she removed her identification from the purse on her lap.

Officer Hernandez and another officer at the scene conducted warrant checks on Garza and the man. While conducting the warrant checks, Officer Hernandez asked Garza to exit the truck. Garza exited the truck and left the purse she had been holding in her lap on the passenger seat. When the warrant checks returned active municipal arrest warrants for both Garza and the man, Officer Hernandez placed them both under arrest. While handcuffing Garza, Officer Hernandez asked her if the purse on the passenger seat was hers, and she said it was. Officer Hernandez then searched the purse and found a "small plastic baggie" containing a white substance inside a wallet. Subsequent lab testing determined the white substance was less than one gram of cocaine.

**B.    Pre-trial proceedings**

After Garza's retained counsel withdrew, trial counsel was appointed on January 4, 2017. On February 13, 2017, the morning of the first trial setting, trial counsel filed an unopposed motion

for continuance for additional time to prepare for trial. After a brief hearing, the trial court granted a two-week extension.

Three days later, trial counsel filed a motion to suppress all evidence obtained as a result of Garza's arrest, arguing Officer Hernandez lacked reasonable suspicion, a warrant, or consent to search or detain Garza. The trial court denied the motion to suppress and explained during trial that Garza "waived her hearing [on the motion to suppress] by not being here when I had it set."

**C.      The trial**

Trial commenced on March 6, 2017, three weeks after the trial court granted Garza's motion for continuance. At trial, the jury heard from two witnesses: Officer Hernandez and the forensic scientist who tested the cocaine found in Garza's purse. The State introduced, without objection, the dash-cam video of the arrest recorded from Officer Hernandez's patrol car (State's Exhibit 2). The State published to the jury the portion of the dash-cam video leading up to Garza's arrest but did not publish the portion following the arrest.

Under cross-examination by trial counsel, Officer Hernandez testified he did not read Garza the *Miranda* warnings but continued asking her questions after placing her under arrest. Trial counsel elicited testimony from Officer Hernandez regarding the questions he asked and the answers Garza gave him after her arrest, and trial counsel played a post-arrest portion of the dash-cam video.[1] Immediately after playing the video, trial counsel asked the trial court to suppress Garza's post-arrest statements and the post-arrest portion of the dash-cam video.

---

[1] The State's brief asserts trial counsel did not publish the video to the jury, but that is not clear from the record. When trial counsel played a portion of the video, the record stated only: "State's Exhibit 2 played." When the State introduced a different portion of the video, the record also stated: "State's Exhibit 2 played," and the trial court stated: "Just for the record, I am not going to have the court reporter transcribe what is on this exhibit. It will stand for itself." There is no dispute the State's portion of the video was published to the jury.

In a lengthy conference outside the jury's presence, the trial court expressed concern about how to cure any error, since it was trial counsel—not the State—who introduced the post-arrest statements. Ultimately, trial counsel and the State agreed the trial court would give the jury an instruction to disregard and the State would redact the post-arrest portion of State's Exhibit 2. The trial court gave the jury the following instruction:

> Ladies and gentlemen, previously on cross-examination there were questions and answers that had to do with an interrogation made by [Officer Hernandez] to Ms. Garza and with Ms. Garza. You are to totally disregard any of those questions and answers that have to do with any statements made by Ms. Garza after the time she was handcuffed.

The State redacted State's Exhibit 2 to omit the post-arrest audio, and the redacted video (State's Exhibit 2A) was substituted for the previously admitted State's Exhibit 2.

The jury found Garza guilty of possession of a controlled substance, namely cocaine, in an amount less than one gram. The trial court suspended imposition of a two-year sentence of imprisonment and placed Garza under community supervision for two years. Garza appeals.

## DISCUSSION

### A. Standard of review

To prevail on a claim of ineffective assistance of counsel, Garza must establish by a preponderance of the evidence that: (1) trial counsel's performance fell below an objective standard of reasonableness; and (2) Garza was prejudiced by trial counsel's defective performance. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). To determine whether trial counsel's performance was deficient, we look to the totality of the representation and the particular circumstances of the case. *Id.* at 813.

Our review of counsel's performance is highly deferential, and we indulge a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Id.* "To defeat the presumption of reasonable professional assistance, 'any allegation of ineffectiveness

must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.'" *Id*. at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996), *cert. denied*, 519 U.S. 1119 (1997)). Consequently, a direct appeal usually is an inadequate vehicle for raising a claim of ineffective assistance of counsel because the record is generally undeveloped as to why trial counsel did what he did. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson*, 9 S.W.3d at 814 n.6 ("[I]n the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an appellant to satisfy the dual prongs of *Strickland*."). Where, as here, the record is silent as to trial counsel's strategy, we will not conclude Garza received ineffective assistance of counsel unless the challenged conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed*, 187 S.W.3d at 392 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 1195 (2003)).

**B.    Analysis**

Garza argues trial counsel committed three acts or omissions that "fell far below an objectively reasonable standard of conduct for an attorney conducting a felony trial." We address each alleged act or omission separately.

1.  Failure to request a longer continuance

First, Garza argues trial counsel was ineffective for failing to request a continuance of longer than two weeks to prepare for trial. Garza asserts trial counsel was "unprepared [for trial] when the date arrived," but does not point to anything in the record specifically supporting that assertion. Garza does not show what additional preparation reasonably effective counsel would have undertaken, nor does she allege how such additional preparation would have changed the outcome of trial. In support of her argument, Garza only cites a single case in which the federal appeals court held the denial of a two-week continuance for appointed counsel to prepare for trial,

which resulted in the defendant proceeding to trial pro se, violated the defendant's Sixth Amendment right to counsel. *Alford v. United States*, 709 F.2d 418, 425 (5th Cir. 1983). Here, in contrast, the trial court granted a two-week continuance, and Garza had counsel at trial.

Further, as the State notes, the amount of evidence trial counsel needed to review and familiarize himself with was not overwhelming. Garza was charged with possession of a controlled substance in an amount less than one gram. The Discovery Acknowledgment dated December 16, 2016 identified sixteen pages of reports and forms, and the State produced ten videos. At trial, the State called only two witnesses and offered four exhibits, including the redacted dash-cam video.

Trial counsel's rationale for not requesting a longer continuance is not reflected on this silent record. Accordingly, we cannot conclude trial counsel was ineffective for failing to seek a continuance longer than two weeks under these circumstances. *See Goodspeed*, 187 S.W.3d at 392 (holding silent record will not support conclusion of ineffective assistance of counsel unless trial counsel's performance was outrageous).

2. Introduction of inadmissible evidence

Second, Garza argues trial counsel was ineffective in "opening the door" to inadmissible, "inculpatory" evidence obtained after Garza's arrest. Specifically, Garza contends trial counsel "introduced numerous statements into the record made by [Garza] . . . many of which supported the State's contentions on direct examination." Garza also argues "[trial counsel] further endangered the case by playing portions of the police dash cam video that he wished to have suppressed, confirming the statements and potentially opening the door for the entire video to be played." Garza argues trial counsel "further emphasi[zed]" the importance of this evidence "to the jury by then having the judge instruct them on it."

Garza, however, does not identify the post-arrest statements she claims were "inculpatory" and "supported the State's contentions on direct examination." She also does not identify the

contents of the portion of the dash-cam video that trial counsel played. While Garza argues trial counsel "potentially" opened the door for the entire video to be played, she does not allege the entire video actually was played.

Although the parties appear to agree that any post-arrest statements Garza made in response to Officer Hernandez's questioning are inadmissible because she was not given *Miranda* warnings, it is not clear that a competent defense attorney would not have introduced those statements for any purpose. Trial counsel's cross-examination of Officer Hernandez focused on Garza's statements that she did not know there was any cocaine in her purse. Garza was charged with "intentionally and knowingly possess[ing] a controlled substance, namely: COCAINE, . . . [in] an amount less than One (1) gram." It is conceivable that trial counsel introduced these post-arrest statements in an attempt to create reasonable doubt that Garza "intentionally and knowingly" possessed the cocaine. Further, although the record does not reflect what portion of the post-arrest audio the jury actually heard, it appears from context that it was a portion in which Officer Hernandez stated he would "tase the s— out of" Garza. The record suggests trial counsel played this portion of the dash-cam video in order to impeach Officer Hernandez's credibility after he testified he did not make such a statement.

Again, on a silent record such as this one, we cannot conclude a competent attorney would not have introduced Garza's post-arrest statements or any post-arrest portion of the dash-cam video. *See Goodspeed*, 187 S.W.3d at 392. In any event, even if trial counsel were deficient in this regard, Garza has not demonstrated she was prejudiced by trial counsel's conduct. The trial court instructed the jury to disregard Officer Hernandez's testimony regarding Garza's post-arrest statements, and the State redacted the post-arrest portion of the dash-cam video. Instructions to the jury generally are considered sufficient to cure any improprieties occurring during trial, and we

must presume the jury followed the trial court's instructions. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). Therefore, Garza has not met her burden under *Strickland*.

   3.   <u>Failure to address legality of the arrest</u>

Finally, Garza argues trial counsel was deficient for failing to argue the original stop and seizure was unconstitutional because the police lacked reasonable suspicion to conduct an investigative stop or probable cause to search the purse and wallet. Garza argues "despite having an active Motion to Suppress Evidence running with the trial, trial counsel failed to move for a ruling from the court."

Trial counsel filed a pretrial motion to suppress all evidence obtained as a result of Garza's arrest. The motion argued "[t]here was not reasonable suspicion, nor consent, to seize, search, hold in custody for interrogation, nor detain [Garza]," and "the seizure and arrest of [Garza], and the search of her person and other individual's vehicle violated the Fourth and Fourteenth Amendments to the United States Constitution, Article I § 9 of the Texas Constitution, Article 38.23 of the Texas Code of Criminal Procedure, and Chapter 14 of the Texas Code of Criminal Procedure." The trial court denied the motion.

Later, during trial, the trial court explained Garza "waived her hearing by not being here when I had it set, the motion to suppress." Regardless, the trial court made a substantive ruling on the lawfulness of the stop and seizure, stating:

> I think even if we had had the motion to suppress, I think that up until the point where there's questioning without her warnings being given to her while she's in cuffs, I think that's all legal. . . . I'm comfortable with the search. I'm comfortable with the arrest. I'm comfortable with the initial—the initial contact that's made with [Garza] and the other occupant of the vehicle when he actually walks towards the officers, but I'm comfortable with all of that.

Therefore, even if the motion to suppress "ran with the trial," as Garza contends, the trial court ruled on it. Because trial counsel raised the constitutionality of the stop and seizure and obtained

a ruling, Garza has not demonstrated ineffective assistance of counsel for failing to raise those issues.

For these reasons, we conclude the totality of the representation and the particular circumstances of the case do not demonstrate trial counsel's performance was deficient. *See Thompson*, 9 S.W.3d at 813. Garza's sole issue is overruled.

## CONCLUSION

Because we overrule Garza's sole issue on appeal, we affirm the trial court's judgment.

Marialyn Barnard, Justice

DO NOT PUBLISH